UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ASIA M. JACKSON,

                Plaintiff,

                                  **Hon. Hugh B. Scott**

            v.                            **17CV1149**

                                  **CONSENT**

COMMISSIONER,                          **Order**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 11 (plaintiff), 14 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 9).

## PROCEDURAL BACKGROUND

The plaintiff ("Asia Jackson" or "plaintiff") filed an application for SSI insurance benefits on August 23, 2013, and the next day for disability insurance benefits [R. 13]. Those applications were denied initially. The plaintiff appeared before an Administrative Law Judge

("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated July 21, 20176, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 11, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 8, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 11, 14), and plaintiff duly replied (Docket No. 15). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 27-year-old with a high school education, last worked as a production line worker (light exertion work) [R. 22]. The Administrative Law Judge found that with her residual functional capacity, plaintiff could perform her prior work [R. 22]. Plaintiff contends that she was disabled as of the onset date of November 30, 2010 [R. 13]. Plaintiff claims the following impairments deemed to be severe by the Administrative Law Judge: bipolar disorder, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, asthma, and eating disorder [R. 15-16].

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that none of plaintiff's impairments or combination of impairments meet the criteria of Listings 3.00 (respiratory system, for her asthma) and 12.00 (mental disorders) [R. 16]. Reviewing "Paragraph B" criteria for Listing 12.00 conditions, the ALJ found that plaintiff had mild restriction to Activities of Daily Living; moderate difficulties for both Social

2

Functioning and Concentration, Persistence, or Pace, and no Episodes of Decompensation, concluding that these criteria were not satisfied, nor were "Paragraph C" criteria [R. 16-17].

Plaintiff was treated at Lakeshore Behavioral Health ("Lakeshore") from May 2013 for her anxiety and depressive symptoms. There, they noted that plaintiff's psychotropic medications that were prescribed in 2009 helped but plaintiff was not consistent in taking the medication. [R. 19-20, 340.] Plaintiff self-referred in October 2013 to address her anxiety and PTSD arising from domestic violence [R. 340]. The ALJ stated that plaintiff's recent Lakeshore treatment records indicated that plaintiff was doing well with a new medication regime [R. 20]. A treatment record from November 27, 2013, noted that plaintiff was linked with Jewish Family Services [R. 359], but the ALJ did not seek records from Jewish Family Services (Docket No. 11, Pl. Memo. at 20).

The ALJ then found that plaintiff had a residual functional capacity to perform work at all exertional levels with some non-exertional limitations [R. 17]. The ALJ concluded that plaintiff can understand, remember, and carry out simple instructions and tasks. This work cannot involve supervisory duties or require independent decision-making. There can be minimal changes in work routine and processes; frequent interaction with supervisor; and no, or only incidental, interaction with coworkers and public. Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, and all exposure to extreme heat or cold. [R. 17.] The ALJ found that, with this residual functional capacity, plaintiff could return to her prior work as a production line worker [R. 22]. Alternatively, the ALJ concluded that plaintiff can perform other jobs. The ALJ posed to the vocational expert a claimant with plaintiff's age, education, experience, and residual functional

3

capacity and the expert opined that this claimant could work in such occupations as office helper and laundry sorter (both light exertion work) [R. 23]. Considering this, the ALJ concluded that plaintiff was not disabled [R. 23-24].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to

obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

The ALJ has a duty to develop the record, Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (Docket No. 11, Pl. Memo. at 18; Docket No. 15, Pl. Reply Memo. at 7); 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1) (2017). The ALJ has to "develop your complete medical history for at least the 12 months preceding the month in which you file your application," and "will make every reasonable effort to help you get medical evidence from your medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports," e.g., 20 C.F.R. § 404.1512(b)(1). "Every reasonable effort" is defined in the regulations to make an initial request and, if not produced, one follow up request, e.g., id. § 404.1512(b)(1)(i).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage.

I.       Medical Opinions

   A.       Consultative Examiner Dr. Ransom

At issue here is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. At Step Four of the five-step analysis, plaintiff contends that the ALJ improperly rejected the medical opinion of consultative examiner, Dr. Christine Ransom, Ph.D. [R. 21, 326-30]. On November 15, 2013, Dr. Ransom examined plaintiff and found that plaintiff's affect was "moderately to markedly dysphoric, irritable, labile, intense and anxious" [R. 327-28]. Dr. Ransom noted moderate impairment in plaintiff's attention and concentration, impaired by mood disturbance, emotional trauma, and anxiety (Docket No. 11, Pl. Memo. at 11; [R. 328, 21]). Dr. Ransom found that plaintiff had moderate impairments with her immediate and long-term memory [R. 328]. Dr. Ransom opined that plaintiff's memory was impaired by mood disturbance, emotional disturbance, and anxiety (Docket No. 11, Pl. Memo. at 11; [R. 328]). The ALJ noted that Dr. Ransom found that plaintiff had moderate to marked difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress [R. 21, 328], while having moderate difficulty in following and understanding simple directions, performing simple tasks independently or maintaining a regular schedule or learning simple new tasks [R. 21, 328]. The ALJ gave this opinion little weight, however, because it was based upon a single examination and not supported by the treatment record or by observations and opinions of treating mental health providers [R. 21].

Defendant Commissioner responds that the ALJ reasonably weighed the medical opinions in this case, noting that plaintiff did not seek treatment for mental impairments until over two years after her claimed onset date (Docket No. 14, Def. Memo. at 12-16, 12).

7

Defendant notes that plaintiff's mental treatment since then showed improvement as plaintiff received conservative treatment and medication and with adjustment to her medication (id. at 12-13). That record indicates no work preclusion limitations (id. at 14).

B. State Agency Consultant, Dr. Butensky

Plaintiff next argues that the ALJ improperly credited the medical opinion from non-examining state agency consultant, Dr. Butensky (Docket No. 11, Pl. Memo. at 12-17). Dr. Butensky reviewed plaintiff's medical records on January 16, 2014 ([R. 90]; Docket No. 11, Pl. Memo. at 10). The doctor opined that plaintiff had no limitation in her physical residual functional capacity and she had moderate limited understanding, remembering, and carrying out detailed instructions ([R. 90, 91-93]; Docket No. 11, Pl. Memo. at 10). The doctor also found that plaintiff had moderate limitations staying within a schedule and maintain regular attendance; working in coordination or proximity to others, accepting instructions and responding to criticism from supervisors, interacting with the public, responding to changes in a work setting, and setting goals and making plans independently of others [R. 91-93]. Dr. Butensky noted that "the updated mental health evidence shows the claimant has positively responded to psychiatric medications, therefore, there are moderate limitations of the [mental residual functional capacity]" [R. 93]. The ALJ gave this opinion great weight because of Dr. Butensky's specialization and consistency with the treatment record [R. 22].

Plaintiff now argues that this is inconsistent with the dismissal of expert Dr. Ransom's contrary opinion (Docket No. 11, Pl. Memo. at 14). Citing this Circuit's precedent, plaintiff argues that the ALJ should not rely upon the non-treating and non-examining physician because of "the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the

8

diagnosis to personally observe the patient," Ransome v. Colvin, 164 F. Supp. 3d 427, 431 (W.D.N.Y. 2016) (Telesca, J.) (quotation omitted) (id.). As Judge Telesca noted in Ransome, the conclusion of a physician who merely reviews a file "are entitled to little, if any, weight," 164 F. Supp. 3d at 431 (quotations omitted).

      C.      How These Opinions Should Have Been Considered

Both consultative doctors here do not have a treating relationship with plaintiff and thus their opinions do not warrant great weight, 20 C.F.R. § 404.1527(a)(2)(i) (length of treatment relationship and frequency of examination), (ii) (nature and extend of treatment relationship) (Docket No. 14, Def. Memo. at 14). Generally, more weight is given where the treating source has seen the claimant multiple times and could develop "a longitudinal picture of your impairment," id. § 404.1527(a)(2)(i). Thus, the ALJ was correct in giving limited weight to Dr. Ransom's opinion but erred in giving great weight to Dr. Butensky. The ALJ also gave great weight to consultative examiner, Dr. Liu, on plaintiff's asthma [R. 22], without regard to the frequency and extent of any treatment relationship plaintiff had with that doctor.

Putting both consultative opinions to one side (for different reasons), the treatment record shows that plaintiff's mental health improved with medication when she was compliant, with compliance issue arising from her bipolar disorder (see Docket No. 11, Pl. Memo. at 16; [R. 314]). As summarized by defendant (Docket No. 14, Def. Memo. at 12-13), plaintiff's treatment noted conservative treatment that was effective while plaintiff had medication [R. 273-74, 340, 343, 320-23, 337, 367, 372-73, 390, 395]. The residual functional capacity factored in plaintiff's memory, attention and concentration [R. 17]. Plaintiff's motion on this ground is **denied**.

II.     Development of Records from Lakeshore Behavioral Health and Jewish Family Services

Plaintiff next argues that the ALJ did not develop her record by not seeking missing potions of her treatment records from Lakeshore and any records from Jewish Family Services (Docket No. 11, Pl. Memo. at 18-20). The latter was alluded to in a Lakeshore record, but plaintiff argues that the ALJ made no effort to obtain the Jewish Family Services treatment record (id. at 20; Docket No. 15, Pl. Reply Memo. at 7).

Plaintiff argues that, presented with an incomplete Lakeshore record and a single reference to Jewish Family Services, the ALJ was obliged to flesh out these treatment records (see Docket No. 11, Pl. Memo. at 18-20; Docket No. 15, Pl. Reply Memo. at 7-8). Defendant retorts that plaintiff offered to obtain additional Lakeshore records (Docket No. 14, Def. Memo. at 17; see [R. 73]) but did not indicate she needed the agency subpoena to obtain the complete record (Docket No. 14, Def. Memo. at 17). Furthermore, the Appeals Council offered plaintiff the opportunity to supplement the record, but plaintiff did not do so (id.; [R. 9, 2]). Defendant concludes that plaintiff fails to allege how this supplemented record from either Lakeshore or Jewish Family Services would affect this case (id. at 18; see Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (summary Order)). Plaintiff speculates in her reply that the additional records would reveal "a better picture of Plaintiff's impairments" (Docket No. 15, Pl. Reply Memo. at 8) without indicating what precisely would be revealed.

Plaintiff's counsel, after noting that Lakeshore was notorious for sparsely releasing information [R. 32-33], asked for additional time and the ALJ held the record open for two weeks [R. 34-35], and at the end of the hearing did propose to obtain additional documents from Lakeshore [R. 73]. Plaintiff did submit as Exhibit 14F further records [R. 377-96, 13] but these

records themselves were incomplete.  Plaintiff did not indicate to the ALJ or later to the Appeals Council that the Lakeshore records were incomplete and that she needed assistance in obtaining complete records.

Had plaintiff or the ALJ obtained the additional records from Lakeshore or Jewish Family Services, they may have shown that plaintiff's condition was under control with adherence to the medication prescribed as well as showing the opposite that plaintiff's condition worsened or remained the same.  Plaintiff has not shown that these supplemental records would further show disability.  Plaintiff now complains that the treatment record of 147 pages was incomplete (Docket No. 15, Pl. Reply Memo. at 8) but plaintiff did not seek to supplement this record, or assistance in supplementation.

As for the Jewish Family Services records, the Lakeshore records gave a single reference to plaintiff seeking treatment at the other institution [R. 359].  The Disability Report—Appeals (admitted into evidence before the ALJ, [R. 13], but undated) notes plaintiff seeking outpatient treatment at Jewish Family Services [R. 233].  Dr. Butensky did not include the Jewish Family Services as sources of evidence considered at the early stage of the application (cf. [R. 84-86]), save possibly the "Unknown Name" medical source with information dated January 15, 2014, around the same date plaintiff began seeking treatment at Jewish Family Services [R. 84, 233].  Again, this Court does not know what plaintiff's Jewish Family Services would reveal, or the number of appointments she had there.  Plaintiff has not indicated what the Jewish Family Services treatment would reveal.

While the ALJ has a duty to assist plaintiff in completing her medical history, e.g., 20 C.F.R. § 404.1513(b)(1), the agency need only "make every reasonable effort to help"

plaintiff get medical evidence from her medical sources, id., § 1512(b)(1)(i). This assistance cannot be rendered in a vacuum. As for the Lakeshore records, plaintiff needed to inform the ALJ or Appeals Council that the records she obtained were incomplete and seek assistance to complete them. This is especially the case where plaintiff's counsel admits the difficulty in obtaining documents from Lakeshore [R. 32-33]. While all may be aware of Lakeshore's general reticence in producing medical records, only plaintiff knows that what services have been provided to the agency is incomplete. As for the Jewish Family Services records, the ALJ was on minimal notice of their existence. Again, plaintiff did not raise these the necessity for assistance for obtaining those records.

Plaintiff's motion on this ground is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 11) judgment on the pleadings is **DENIED**, and defendant's motion (Docket No. 14) for judgment on the pleadings is **GRANTED**. Thus, the decision of the defendant Commissioner is **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

_s/Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
March 27, 2019